[Crim. No. 381. Fourth Appellate District.—March 21, 1939.]

THE PEOPLE, Respondent, v. JOE MARTINEZ, Appellant.

P. E. Bingman for Appellant.

Earl Warren, Attorney-General, and John L. Nourse, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was found guilty of murder in the first degree with a recommendation of life imprisonment. He appeals from the judgment and from an order denying his motion for a new trial.

It is first contended that the evidence is not sufficient to support the verdict. The defendant admitted that he shot and killed one Venturo Romero but claimed that he acted in self-defense. There is evidence of the following facts. The appellant and the deceased engaged in a fist fight on October 9, 1938, which the appellant says he won. He was six inches taller than Romero. Half an hour later Romero returned and struck the appellant with a piece of iron pipe.

On the evening of October 14, 1938, the appellant, accompanied by two others, was proceeding easterly on a street in Cucamonga when they met Romero and two companions, who were traveling westerly along the same street. It was dark but the scene was partially lighted by electric lights some 90 or 100 feet away. As the two groups approached each other the appellant said: "Venturo, come over here." Romero went over "a little ways" and the appellant said: "That is just where I want to get you". The appellant then fired the first shot which went into the ground. At that time Romero was standing still with his hands by his side and with nothing in his hands. When he fired the first shot Romero said, "You can't scare me with a gun", and immediately thereafter the appellant fired a second shot which struck Romero in the abdomen, causing his death some thirty minutes later. All of this took place within a few seconds. Romero, clutching his abdomen, walked or ran to a store some 150 feet away. The appellant followed and, pointing his gun at him, asked if he wanted another shot. Romero collapsed in front of the store and died without making a statement. There were no powder marks on Romero's body or on his clothing and a grape or vineyard knife was found in his right front pocket.

There was evidence on behalf of the appellant to the effect that when the two groups met the appellant called to Romero and asked "Was he looking for him?", to which Romero replied: "Yes"; that Romero had a knife in his hand and took a step toward the appellant with his arm held back; and that the appellant then shot twice in rapid succession, the first shot being aimed at the ground. The appellant testified that he was afraid of Romero; that he believed his life to be in danger when he fired each shot; that he saw a knife in Romero's hand before the first shot was fired; that Romero started toward him before he fired the first shot; that he car-

ried the pistol that night because he was afraid of Romero; that he had owned the pistol for a year but had never carried it before; that he went home to get the gun some twenty or twenty-five minutes before they met Romero; that he checked to make sure the gun was loaded before he went out; that Romero was four or five feet from him when he fired the first shot; that Romero took another step forward between the first and second shots; and that he was carrying the gun for the purpose of "making friends" with Romero. Shortly after the shooting the appellant told an officer that on October 9th he had picked a quarrel with Romero because Romero had been in a quarrel with his (the appellant's) father. He admitted on the stand that a story he had previously told the officers about the gun was not true.

While there is a conflict in the evidence, a portion thereof discloses every element of first-degree murder and is entirely sufficient to support the verdict and judgment.

■ It is next contended that the court erred in sustaining objections to two questions asked of a certain witness. These questions related to what had happened on October 9th when Romero had struck the appellant with an iron club or piece of pipe. After the witness was asked for a general statement of what had occurred on that occasion the court told appellant's counsel that he could go into that matter for the purpose of showing the appellant's attitude of mind, but suggested that he bring out what he desired by pursuing the usual course of asking the witness questions to be answered by him. This course was pursued and the court allowed every question to be answered with two exceptions. The first of these called for a description of the club used on that occasion. This club had already been described by this witness and a further description would have been cumulative. The other question was as to whether Romero, on that occasion, had also hit the witness with this club. An objection was sustained although the witness had answered, before the objection was made, "he did". This was left in the record and no prejudice appears.

■ It is next argued that the court erred in excluding certain testimony regarding alleged threats against the appellant made by the deceased. The contention is that it was unnecessary for the appellant to show that such threats had

actually been made by the deceased, that it was sufficient to show that the appellant believed that such threats had been made, and that the court erroneously ruled out evidence which would have supported the latter proposition. The appellant admitted on the stand that no threats against him had been made by Romero prior to the evening on which the shooting occurred. The only contention is that such threats were communicated to him on that evening by one Garcia and by one Charlie Flynn.

The appellant fails to point out any instance in which evidence along this line was rejected. We have, however, made a careful examination of the transcript. The appellant was first asked by his counsel whether Garcia had warned him that the deceased "was out to get him". The court told counsel not to leave it to the witness to determine what was or was not a warning but told him "You may call out whatever you contend was a warning so that we may know just what was communicated to the witness at that time". Shortly thereafter the court told counsel to bring out the exact conversation so that the jury might be able to tell whether or not a threat had been made. A little later the court cautioned counsel to be definite as to what person had told something to the witness and just what this person had told him. The witness was then asked whether on October 14th Charlie Flynn had told him that "Venturo Romero was looking for you with a knife". His reply was stricken because he inserted statements of his own and immediately thereafter said that Charlie Flynn had not made these statements but that he had said "to be careful". The witness was then asked if he knew the deceased was making threats against him. An objection was overruled. The witness was then asked who communicated threats to him and he replied: "Garcia and Charlie Flynn". The witness was then asked what Garcia had told him. His reply to that question was stricken with the express consent of his counsel. The court then informed appellant's counsel that he would be given an opportunity to show what statements had been made and who made them, and counsel replied that he would do so later. Later, Garcia testified that he had had no conversation with the appellant on October 14th other than to say hello to him. Flynn was then asked whether he had said to the appellant,

"You had better look out *they* are looking for you". An objection was sustained to this question as not referring in any way to the deceased and no attempt was made to ask further questions on this subject of this witness. On cross-examination, Flynn testified that he had never heard Romero make any threats against the appellant. No offer of evidence along this line was made and we are unable to find where any such evidence was improperly rejected.

It is further contended that the court erred in refusing to give five instructions requested by the appellant. The brief contains nothing but this bare statement and no attempt is made to point out in what respect error occurred. An examination of the record discloses, however, that the subject matter of these instructions was amply covered in other instructions which were given. Complaint is also made because the court gave one instruction which was requested by the appellant. We are pointed to no error in that particular and the instruction appears to be quite correct.

It is finally urged that the court erred in refusing to reduce the degree of the crime of which the appellant was convicted, it being contended that the evidence does not support the conviction of any crime greater than manslaughter. This point has been sufficiently considered in connection with the sufficiency of the evidence to support the judgment as rendered.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.